Justice Laurie McKinnon, dissenting.
¶ 23 A "home state" determination requires courts to look at where the child "lived" during the six months before the initiation of a child custody proceeding. Section 40-7-103(7), MCA. During the six months before the initiation of this proceeding, B.K. lived in Montana for only one week. Nevertheless, the Court concludes Montana is her "home state." Opinion, ¶ 21. In Sampley , ¶ 28, we determined that a similar amount of physical presence in Montana, between four days and one month, was insufficient to conclude Montana was the child's home state. Here, we do the exact opposite because the courts communicated appropriately and, according to Mother, Mother did not intend to live in Minnesota for any longer than one year. Unfortunately, the courts' communication *711 skills are irrelevant and the sincerity of their desire to help the parties does not insulate their decisions from appellate review. Under the UCCJEA and Sampley , Mother's self-serving statement about her intention does not inform the decision of whether Montana is B.K.'s home state, although it may be one of many circumstances to consider when determining whether an absence from the home state is temporary.
¶ 24 Instead, I would conclude Minnesota is B.K.'s home state under ***437 §§ 40-7-103(7) and -201(1)(a), MCA, because she was physically present in Minnesota for all but thirty-five days of the six months preceding the initiation of this action. Considering the totality of the circumstances relating to the absence from Minnesota, as Sampley requires, that period constituted a temporary absence because it was a short, unplanned, and chaotic period. Prior to the absence, B.K. lived in Minnesota for approximately nine months with Mother, Father, and her sister (Sister), where Sister attended school, Mother was employed part-time, Father was employed full-time, and Mother and Father entered into a one-year residential lease agreement. In fact, B.K. only left Minnesota when Mother unilaterally removed her from the state without Father's permission. Thereafter, Mother did not care for B.K. in Montana. Instead, B.K. traveled to Father's parents' home in Washington, not for a "vacation," Opinion, ¶ 2, but because, having just moved to Montana without permission from Father or any pre-existing plan to do so, Mother lacked housing, employment, and childcare for B.K. in Montana. B.K. spent more than three weeks in Washington, approximately one week in Montana, and then returned to Father's care in Minnesota. Mother subsequently initiated this parenting action in Montana.
¶ 25 Today, we do our jurisprudence concerning the UCCJEA, an act adopted to clarify child custody issues and avoid jurisdictional conflict, a disservice by avoiding its common-sense definition of "home state," § 40-7-103(7), MCA ; construing a period of up to one year to be a "temporary absence" if one party later says she only meant for it to be temporary; and avoiding the holdings in relevant, on-point, and controlling caselaw. I would reverse the Montana Court's order concerning jurisdiction and conclude, based on §§ 40-7-103(7) and -201, MCA, Stephens , and Sampley , that the Minnesota Court has jurisdiction over B.K.'s child custody proceeding because Minnesota is her home state.
¶ 26 A court has jurisdiction to make an initial child custody determination if it "is the home state of the child on the date of the commencement of the proceeding." Section 40-7-201(1)(a), MCA.
"Home state" means the state in which a child lived with a parent or a person acting as parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
Section 40-7-103(7), MCA (emphasis added). Here, during the "6 ***438 consecutive months immediately before the commencement," or the six months preceding June 29, 2016, B.K. "lived in" Minnesota for approximately five months, Washington for three weeks, Montana for one week, and Minnesota again for four days. While it is true B.K. was not in any one state for every single day of the six months preceding June 29, 2016, it is also clear that she spent the least amount of time in Montana.
¶ 27 Backing up even further, it is clear Montana was B.K.'s home state when she initially moved to Minnesota because she was born in Montana in 2013 and lived in Montana until 2015, longer than six months. See Stephens , ¶¶ 10, 17. However, upon B.K.'s relocation to Minnesota in September 2015, a "six-month clock" began running in that state. See Stephens , ¶ 17. By March 2016, at the latest, when B.K. had lived in Minnesota for six consecutive months, Minnesota became B.K.'s home state. B.K. continued to live in Minnesota for approximately three additional months, until May 21, 2016. B.K. was absent from Minnesota from May 21, 2016, until June 24, 2016. B.K.'s thirty-five-day *712 absence from Minnesota could be considered either: (1) the start of a new "six-month clock" for Washington or Montana; or (2) a "temporary absence" from Minnesota. Thus, Minnesota remained B.K.'s home state for purposes of the UCCJEA if B.K.'s absence from Minnesota was a "temporary absence." If B.K.'s absence from Minnesota was not a "temporary absence," then B.K. has no home state and there can be no home state jurisdiction-B.K. would not have lived in any state for "at least 6 consecutive months immediately before commencement of" the action. Where a child lacks a home state, other provisions of § 40-7-201(1), MCA, apply and would have to be considered. Stephens , ¶ 9 ; see § 40-7-201(1)(b)-(d), MCA. The first jurisdictional inquiry, however, is whether there is a home state pursuant to the provisions of § 40-7-201(1)(a), MCA. Stephens , ¶¶ 6-7.
¶ 28 The term "temporary absence" is included in the definition of "home state." Section 40-7-103(7), MCA. Although the term "temporary absence" is not defined, the definition of "home state" requires any period of temporary absence be included as "part" of the six-month period the child lived in his or her claimed home state. Section 40-7-103(7), MCA ("A period of temporary absence of any of the mentioned persons is part of the period."). Implicit in that requirement is the concept that a "temporary absence" cannot be longer than the "period" and still be a "part" of that period-a "temporary absence" cannot be longer than the entire six months immediately preceding the child custody proceeding.
¶ 29 The analysis for determining a child's home state is intended to be ***439 straightforward. First, a court must identify where the child "lived" during the six consecutive months before the commencement of the child custody proceeding. Sections 40-1-103(7) and -201(1)(a), MCA. Second, if the child was absent for "part" of that six-month "period," a court must determine whether the absence was a "temporary absence" by considering the totality of the circumstances surrounding that absence. Sampley , ¶ 28 ; § 40-1-103(7), MCA. Some circumstances to consider include the child's physical presence; the integration of the child into the Montana community; the duration of the absence; the parties' living arrangement; the location of other family members; the frequency of relocation; and the parties' intentions. Sampley , ¶¶ 22, 25-28.
¶ 30 Instead of applying these rules in a straightforward manner, the Montana Court equated Mother's "temporary move" to Minnesota with B.K.'s "temporary absence" from Montana and thereby concluded Montana is B.K.'s home state. Our decision today erroneously affords deference to the District Court's finding. See Opinion, ¶¶ 14, 16, 18. Our standard of review is for correctness. Opinion, ¶ 5. Therefore, our review must begin, as the UCCJEA instructs, with a determination of where B.K. lived. Instead, our decision places the cart before the horse by first considering whether B.K.'s nine-month absence was a "temporary absence" from an incorrectly designated home state, Montana.
¶ 31 Our caselaw recognizes that a "six-month clock" begins to run when a child moves from his or her home state to a new state. Stephens , ¶ 17. Instead of recognizing that B.K. began living in Minnesota in September 2015, and beginning our analysis there, we focus, just as the District Court did, on Mother's bald representation that she never intended to remain in Minnesota for longer than one year. As evidence, Mother points to an agreement with Sister's father, which no one can locate, and Mother's discussions with Father about potentially moving back to Montana or another, unknown state to accommodate his career. Mother's own actions did not conform with her stated intention: Mother enrolled Sister into school in Minnesota; Mother obtained part-time employment in Minnesota; and after living in Minnesota for several months, signed a year-long residential lease agreement in Minnesota. Mother's actions indicated she would remain in Minnesota for a minimum of one year. I would conclude Minnesota is B.K.'s home state and therefore has jurisdiction to make an initial child custody determination.